STATE OF VERMONT

ENVIRONMENTAL COURT

In re: Appeal of } }
  Ran-Mar, Inc. } Docket No. 60-4-99 Vtec
 }
 }

Decision and Order

Appellant appealed from a March 18, 1999 decision of the Development Review Board (DRB) of the Town of Berlin granting Subdivision Permit #98039 and amending conditional use Permit #98040. Appellant is now represented by David R. Bookchin, Esq.; the Town is represented by Robert Halpert, Esq. Two issues remain in the appeal: the first sentence of Condition 2 regarding the minimum road frontage waiver request for lots 52, 53, 60, 61 and 62; and Condition 6 regarding Appellant's request for a ten-year rather than a five-year completion date.

Appellant owns a 15.5-acre parcel of property on the north side of 307 Partridge Road, near the intersection of U.S. Route 302 and the Berlin State Highway, in the Rural Residential zoning district. This is the only undeveloped section of a Planned Residential Development (PRD) for which Appellant obtained conditional use approval in May of 1987, before the Town had adopted subdivision regulations. As amended in 1988, Appellant's conditional use permit allowed the construction, phased in over time, of 33 single family lots, 3 duplex housing units, and 102 condominium units, or a total of 141 housing units on 129.9 acres of a 164.7-acre parcel, and the infrastructure of roads, railroad crossing improvements, water mains and lines, sewer lines and a pumping station to serve the entire project. All the condominium units were to have been located on the 15.5-acre parcel that is the subject of the present appeal.

Appellant began to construct the infrastructure for the entire project soon after obtaining the 1987 conditional use approval, and by March of 1989 had completed all the infrastructure elements except those which were located on and served only the 15.5-acre parcel at issue in this case. The Town adopted subdivision regulations on March 7, 1989.

Prior to applying for the permits at issue in the present appeals, Appellant had

1

completed and sold all the single-family lots and duplexes approved in the PRD, and had dedicated to the Town all roads which had been constructed for the project.

In 1998, Appellant applied for the present amendment to the PRD's conditional use permit to modify the previously-approved 102 condominium units on the 15.5-acre parcel to a plan for 23 single-family homes and 44 condominium units, lessening the density on that parcel from 102 approved units to 67 proposed units. The proposed 23 single family homes are to be built in place of 58 of the previously-approved condominium units; the remaining 44 condominium units are essentially unchanged from those units originally permitted in 1987.

By summary judgment, the Court ruled that the only portion of the project subject to the 1989 Subdivision Regulations is the 15.5-acre parcel, but that action on the amendment to the conditional use permit for the whole PRD may consider the effects of the proposal for the 15.5 acres on the PRD as a whole.

Appellant requests that the project completion date be extended to ten years rather than the five years imposed by the Planning Commission. Section (II)13.3(e) of the Zoning Regulations allows a PRD to be phased in over a reasonable period of time to avoid placing an undue burden on municipal services. Section 530 of the Subdivision Regulations also allows phasing to assure the orderly development of the entire subdivision. Appellant provided economic evidence to show that a period of ten years is reasonable for the Central Vermont housing market to absorb this number of single-family and condominium units. The Town provided no countervailing evidence, regarding municipal services or orderly development, to support its request for the entire project to be built in five years. While the Town argues that a longer buildout period increases the risk that the development could become nonconforming if the regulations are amended in the interim period, that would be true regardless of the buildout period. That is, Appellant would be entitled to build the development as approved, whether or not the buildings were all built at the time of the regulation change. Accordingly, Appellant's request to modify Condition 6 to provide for a ten-year period for the development is GRANTED.

Appellant requests that lots 52, 53, 60, 61 and 62 be allowed to have less than the required 120 feet of lot frontage.

During the course of the hearing, it became apparent that neither Appellant nor the Town had measured lot frontage according to the definition in the regulations, which is the

distance across the width of the lot at the building or proposed front line, and which is required to be measured along the chord of a curve.  Instead, both parties were acting on the basis of a measurement similar to that of "street frontage" (defined as the lineal distance of the lot along the edge of the traveled way), but measured along the proposed front lot line rather than along the traveled way.  Due to this mutual mistake, the Town stated on the record that it waived the frontage requirements for any lots made nonconforming by the measurement along the curve.  However, the Town maintained its position that all the house lots in the amended plan should have 120 feet of frontage measured along the front property line.  The Town argues that the only justification for waiver of the frontage requirement is to achieve the goals of the PRD as stated in §(II)13, and not simply to allow Appellant to create a larger number of lots.

The lots as laid out in the amended plan (Exhibit 6) make good use of the plateau areas of the site, avoiding the steep and rocky areas unsuitable for development.  However, we must examine whether any waiver of the frontage requirements is necessary for each lot or group of lots, to make an orderly and reasonable use of the available land.  Therefore we examine Lots 53 and 52 in relation to one another, and Lots 60, 61, and 62 in relation to one another.

Lot 52 contains a relatively steep embankment running across its southerly corner.  In order to provide enough land to the west of that embankment to lead a driveway into Lot 52 from the roadway, the dividing line between Lot 53 and Lot 52 cannot run appreciably farther to the east than as it is laid out.  Accordingly, a waiver of six linear feet is granted for the frontage of Lot 53, to measure 114 feet.  However, Appellant provided no evidence why the turnaround of the road and the easterly line of Lot 52 could not be laid out to extend approximately fourteen feet farther to the east, which would allow Lot 52 to comply with the frontage requirements.  Accordingly, no waiver is granted for Lot 52; Appellant shall provide an amended site plan for filing with the Planning Commission, showing the redrawn easterly lot line for Lot 52 in compliance with the frontage requirements and this decision.

Lots 60, 61, and 62 are located along an outside curve of the subdivision road, limiting the total frontage available to these lots as compared to their area.  Lots 62 and 61 are also limited on their northerly edges by a steep drainage swale.  Lot 60 is limited on its easterly edge by an existing tree line, which also appears to mark the beginning of a relatively steep slope.  The combined frontage of the three lots is 299 feet, which would

3

allow only two lots with complying frontage. However, to require only two rather than three lots to be created in this corner of the proposed subdivision would make two unnecessarily large lots, out of proportion to the rest of the lots in the subdivision. Hence, some waiver of the frontage requirements is necessary for the orderly and rational development of lots for this corner of the subdivision. The waiver is granted as requested for Lots 60 and 61. However, similarly to the discussion of Lot 52, Appellant has not shown any reason why the westerly line of Lot 62 could not be extended two feet farther to the west to render that lot complying as to frontage. Accordingly, no waiver is granted for Lot 62; Appellant shall provide an amended site plan for filing with the Planning Commission, showing the redrawn westerly lot line for Lot 62 in compliance with the frontage requirements and this decision.

This decision and order concludes this matter in this Court.


Done at Barre, Vermont, this 27th day of November, 2000.


_____
                          Merideth Wright
                          Environmental Judge

4